FILED
United States Court of Appeals
Tenth Circuit

February 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LESLIE SUSAN HARRISON, a/k/a
Leslie Harrison, a/k/a Leslie Stultz,

    Defendant - Appellant.

No. 12-5173

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:12-CR-00016-CVE-1)**

---

O. Dean Sanderford, Assistant Federal Public Defender, (Raymond P. Moore, Federal
Public Defender, with him on the briefs), Denver, Colorado, for Defendant – Appellant.

Dennis A. Fries, Assistant United States Attorney, (Danny C. Williams, Sr., United States
Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff – Appellee.

---

Before **HARTZ, SEYMOUR,** and **TYMKOVICH,** Circuit Judges.

---

**HARTZ,** Circuit Judge.

Defendant Leslie Susan Harrison was convicted by a jury of conspiring to manufacture and distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846. The United States District Court for the Northern District of Oklahoma sentenced her to 360 months in prison. On appeal she challenges the sentence on five grounds: (1) that the court improperly adopted the calculation in the probation office's presentence report (PSR) that Defendant was responsible for more than 1.5 kilograms of methamphetamine, leading to a base offense level of 34, *see* USSG § 2D1.1(c)(3); (2) that there was insufficient evidence to support an enhancement of her offense level on the ground that her offense created a substantial risk of harm to the life of a minor, *see id.* § 2D1.1(b)(13)(D); (3) that the court improperly enhanced her offense level on the ground that she was an organizer, leader, manager, or supervisor of criminal activity, *see id.* § 3B1.1(c), because the court did not make the necessary factual findings; (4) that the court was barred from assessing three criminal-history points arising from a prior conviction because the conviction was for relevant conduct, *see id.* § 4A1.2(c) & cmt. n.1; and (5) that her sentence is substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the sentence and remand for further proceedings. We agree with Defendant's first argument. When she challenged the drug-quantity calculation in the PSR, the district court did not require the government to put on evidence supporting the calculation, stating that the PSR was based on trial testimony. This statement was inaccurate, and the error was not harmless because the trial evidence

2

would not compel a finding of at least 1.5 kilograms of methamphetamine. Because the other issues may be mooted on remand, we need not address them.

## I. PRESERVATION

The government argues that Defendant's challenge to the drug-quantity calculation was not preserved below. It points out that Defendant did not object to the PSR before the sentencing hearing and that the only objection raised at the hearing was raised by Defendant, not her counsel. True, a district court need not consider a factual objection to the PSR that was not timely raised before the sentencing hearing. *See* Fed. R. Crim. P. 32(f)(1); *United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008). And a district court does not need to consider pro se objections made by defendants represented by counsel. *See United States v. Dunbar*, 718 F.3d 1268, 1278 (10th Cir. 2013). *But cf. United States v. Jarvi*, 537 F.3d 1256, 1258, 1262 (10th Cir. 2008) (represented defendant can make argument during allocution that could not be made by pro se motion). But the district court has discretion to consider untimely objections, *see United States v. Ahidley*, 486 F.3d 1184, 1187–88 n.2 (10th Cir. 2007) (under Fed. R. Crim. P. 32(i)(1)(D), a court, for good cause, can consider objections made any time before the sentence is imposed), and pro se objections raised by represented defendants, *see Stouffer v. Trammell*, 738 F.3d 1205, 1219–20 (10th Cir. 2013); *Dunbar*, 718 F.3d at 1278. That was the case here. Defendant objected at sentencing, the court specifically questioned her to understand her objection, and then the court ruled on it:

THE COURT: Any objections, corrections, or changes [to the PSR]?

3

MR. GIFFORD [(Defense Counsel)]: No, your Honor.

THE DEFENDANT: Yes. The whole thing was wrong, if that's the one you brought me.

MR. GIFFORD: Your Honor, we did go over that before the deadline objection. {sic}

THE COURT: You have filed no objections?

MR. GIFFORD: That's correct.

THE COURT: Your client is just saying that she disagrees with the entire report?

MR. GIFFORD: Exactly. Yes.

THE COURT: And what is the basis of your objection?

THE DEFENDANT: I don't have the report in front of me but—

THE COURT: But from memory, what's the basis of—

THE DEFENDANT: There were several mistakes in it and I told Mr. Gifford at the time that he needed to do something about that.

THE COURT: For example? Give me an example.

THE DEFENDANT: The amounts that were on there.

THE COURT: Oh, you disagree with the probation officer's calculation, but he based that calculation on the testimony at trial.

R.,Vol. 2 pt. 2 at 537–38. The court then ordered that the PSR be placed in the record and adopted its recommended offense levels.

The government also argues that Defendant's objection was not specific enough. Again, the government is correct that an insufficiently specific objection does not preserve a claim of error, *see United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008) ("To invoke the district court's . . . fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy." (brackets and internal quotation marks omitted)); and Defendant's objection to the "amounts that were on there" was certainly imprecise. But the test is whether the district court was adequately alerted to the issue. As explained in *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009), the objection should be "definite enough to indicate to the district court the precise ground

4

for a party's complaint," *id.* (internal quotation marks omitted), because without such an objection, the "court is deprived of the opportunity to correct its action in the first instance," *id.* Here we need not speculate on whether the district court was sufficiently alerted to the issue because it paraphrased the objection as, "you disagree with the probation officer's calculation," which is the objection raised on appeal.

We hold that the issue was adequately preserved. We therefore review for clear error the district court's finding that the PSR's factual assertions were based on trial testimony. *See United States v. Mendoza*, 543 F.3d 1186, 1190 (10th Cir. 2008).

## II. DRUG QUANTITY

"At sentencing, the district court may rely on facts stated in the presentence report unless the defendant has objected to them. When a defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence." *United States v. Shinault*, 147 F.3d 1266, 1277–78 (10th Cir. 1998) (citation omitted). The government can meet its burden by pointing to trial evidence rather than offering new evidence. *See United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir. 1996). Thus, if the district court was correct that the PSR "based that calculation on the testimony at trial," we would affirm its finding of quantity. But the PSR's calculation was not derived from trial testimony.

The PSR based its calculation almost entirely on how much methamphetamine was manufactured by Defendant and David Mayes from 2003 to 2008. It said:

During the five years of their relationship, Mayes and [Defendant] manufactured methamphetamine once or twice a week in a barn on [Defendant's] farm. . . . The typical cook yielded various amounts of methamphetamine between seven and one-half grams and thirty grams on each occasion. Based on the amounts manufactured and the frequency of the manufacturing, it is conservatively estimated [Defendant] was responsible for the manufacture of 1,950 grams (1.95 kilograms) of methamphetamine.

R., Vol. 4 at 4–5 (footnote omitted). The PSR added another 5 grams that Defendant once manufactured with a David Habjan, to reach a total of 1.955 kilograms. Although it noted that Defendant distributed methamphetamine during the time she manufactured it, the PSR attributed no extra quantity to that activity. As the government conceded at oral argument, nothing at trial supports the quoted statement from the PSR. The district court erred in saying that the PSR calculation came from trial testimony.

The government argues, however, that the district court did not clearly err because trial evidence supports the court's determination that Defendant was responsible for more than 1.5 kilograms of methamphetamine, even though the PSR calculation was not based on that evidence. The government's argument is flawed because the court did not purport to rely on evidence at trial that was not mentioned in the PSR. The district court clearly committed error; the only remaining question is whether the error was harmless.

"In non-constitutional harmless error cases, the government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." *United States v. Keck*, 643 F.3d 789, 798 (10th Cir. 2011) (internal quotation marks omitted). Substantial rights are not affected if the error "did not

6

affect the district court's selection of the sentence imposed." *United States v. Kaufman*, 546 F.3d 1242, 1270 (10th Cir. 2008) (internal quotation marks omitted). But an error is not harmless if it requires us to "speculate on whether the court would have reached [the same] determination" absent the error. *United States v. Padilla*, 947 F.2d 893, 895 (10th Cir. 1991). Accordingly, if the district court failed to make a necessary fact finding, we ordinarily reverse and remand for the court to do so. *See United States v. Massey*, 48 F.3d 1560, 1574 (10th Cir. 1995). We do so here because we are not sufficiently confident that the district court, had it considered the matter, would have found at least 1.5 kilograms of methamphetamine based on the trial testimony. *Cf. United States v. Anderson*, 189 F.3d 1201, 1214 (10th Cir. 1999) (affirming despite failure to make necessary finding because appellate court was "convinced the district court would have imposed the same sentence enhancement" anyway).

The government points to several sources of evidence at trial allegedly establishing that Defendant's offense involved more than 1.5 kilograms of methamphetamine. But some of the evidence, even if believed, proves little regarding amounts, and other evidence may not have been credited by the district court or the court may not have extrapolated from it as suggested by the government.

Some of the evidence indicates Defendant's involvement with methamphetamine but is unhelpful with respect to quantities: (1) law-enforcement officers found evidence of methamphetamine production and distribution when executing four search warrants and conducting several traffic stops, but there is no evidence that any quantity seized was

more than minimal; (2) law-enforcement officers found discarded equipment and materials tied to Defendant that were used to manufacture methamphetamine, but the government does not suggest any actual quantities that can be attributed to what was found; and (3) on several occasions Defendant admitted to law-enforcement officers that she was involved in manufacturing and distributing methamphetamine, but she never admitted to producing or distributing particular quantities of methamphetamine.

Other trial evidence did speak of quantities but the quantities were not precise and extrapolation would be required to reach the 1.5 kilograms of methamphetamine necessary to support the offense level stated in the PSR. First, Joshua Cornog testified that he and Defendant manufactured methamphetamine together during a six-week period in late 2008. He estimated that they conducted about 60 "cooks" of up to 10 grams of methamphetamine each time. R., Vol. 2 pt. 2 at 288. Assuming that each cook produced 7.5 grams, the government extrapolates this rate of production over the entire course of the conspiracy (five years) to total 19.5 kilograms. But this extrapolation is not based on any testimony that Defendant manufactured methamphetamine at a steady pace for five years.

Second, Sheila Parcel testified that (1) Defendant and her coconspirators were exchanging methamphetamine for ephedrine pills and stolen items brought by Parcel and six or seven others, and (2) she had obtained one gram of methamphetamine from Defendant and her coconspirators every day or every other day for one or two years. But the testimony about exchanges lacks any indication of quantity, and testimony about

Parcel's personal acquisitions, even if fully believed, would support only a total of between 182.5 grams (1 gram every other day for one year) and 730 grams (1 gram every day for two years).

Perhaps this evidence would have persuaded the district court that Defendant had manufactured at least 1.5 kilograms of methamphetamine over the years. But we cannot say how credible the court found these witnesses to be or how much the court would feel justified in extrapolating from the evidence. We are particularly hesitant because the PSR did not see fit to refer to the testimony of the witnesses. For us to say that the court's incorrect reliance on the PSR "did not affect the district court's selection of the sentence imposed," *Kaufman*, 546 F.3d at 1270 (internal quotation mark omitted), we would have to engage in improper speculation, *see Padilla*, 947 F.2d at 895. We therefore cannot say that the error was harmless, and we must reverse and remand.

## III.   CONCLUSION

We VACATE Defendant's sentence and REMAND for resentencing. The court will unseal Volume III of the record unless a party files within 14 days a motion with supporting argument to keep the volume under seal.