FILED
United States Court of Appeals
Tenth Circuit

December 22, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAMELA KATHRYN CONLEY,

    Defendant - Appellant.

No. 22-5112

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:21-CR-00064-JFH-1)**
_____

Lynn C. Hartfield, Law Office of Lynn C. Hartfield, LLC, Denver, Colorado, for
Defendant – Appellant.

Steven J. Briden, Assistant United States Attorney, (Clinton J. Johnson, United States
Attorney with him on the brief), Tulsa, Oklahoma, for Plaintiff – Appellee.
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

    Pamela Kathryn Conley pled guilty to 24 counts of bank fraud and 4 counts of

aggravated identity theft. The district court sentenced her to 30 months in prison for

bank fraud and a consecutive 24 months for aggravated identity theft.

On appeal, Ms. Conley argues the district court erred in relying on the loss calculation in the presentence report ("PSR") to determine her U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range for bank fraud. She also argues that in light of *Dubin v. United States*, 599 U.S. 110 (2023), the court plainly erred in accepting her guilty plea to aggravated identity theft.

Exercising jurisdiction under 28 U.S.C. § 1291, we vacate Ms. Conley's sentence for bank fraud and remand for resentencing on those counts, and we affirm her convictions for aggravated identity theft.

## I.  BACKGROUND

### A.  *Factual History*

Between September 2016 and August 2021, Ms. Conley applied for loans at seven financial institutions using false employment and salary information. She sought $1,028,643.20 in loans and received $998,643.20. She used various cars, boats, and trailers as collateral.

In four instances, Ms. Conley used the names and forged signatures of financial-institution employees to create false lien releases for already encumbered vehicles. She used these lien releases to repledge the same vehicles as collateral for new loans.

### B.  *Procedural History*

A grand jury indicted Ms. Conley on 24 counts of bank fraud under 18 U.S.C. § 1344 and 4 counts of aggravated identity theft under 18 U.S.C. § 1028A(a)(1). She pled guilty, without a plea agreement, to all 28 counts.

The Probation Office's PSR found the "loss" caused by Ms. Conley's offense was $1,020,591.62,[1] which triggered a 14-level increase in Ms. Conley's Guidelines offense level.  Ms. Conley argued that the properly calculated loss amount should have been below $550,000, which would have triggered only a 12-level increase.

At the sentencing hearing, the district court, over Ms. Conley's objection, relied on the PSR's loss amount to calculate her Guidelines range for bank fraud as 30 to 37 months.  The court sentenced her to 30 months in prison.  It also sentenced her to a mandatory consecutive 24 months for aggravated identity theft, U.S.S.G. § 2B1.6, and three years of supervised release.  The court ordered her to pay $451,064.64 in restitution.

Ms. Conley timely appealed.

## II.  **DISCUSSION**

Ms. Conley raises two issues.  First, she challenges the district court's calculation of her Guidelines range for bank fraud.  Second, she argues *Dubin v. United States* renders the court's acceptance of her guilty plea to aggravated identity theft plainly erroneous.  We vacate Ms. Conley's sentence for bank fraud and remand for resentencing.  We affirm her aggravated identity theft convictions.

---

[1] The Probation Office reached this number by taking the amount of loans Ms. Conley sought ($1,028,643.00) and subtracting the value of one returned vehicle ($8,051.38).  We detail the formula for loss below.

### A. *Loss Calculation*

The district court clearly erred in relying on disputed facts in the PSR to calculate

Ms. Conley's Guidelines range for bank fraud, making her sentence procedurally

unreasonable.

### 1. **Legal Background**

#### a. *Standard of review*

We review sentencing decisions for abuse of discretion. *Peugh v. United States*,

569 U.S. 530, 537 (2013). "When reviewing a district court's application of the

Sentencing Guidelines, we review legal questions *de novo* and we review any factual

findings for clear error." *United States v. Maldonado-Passage*, 4 F.4th 1097, 1103

(10th Cir. 2021) (alterations and quotations omitted).

"A district court's loss calculation at sentencing is a factual question we review for

clear error." *United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009) (quotations

omitted).[2] "[W]e may disturb the district court's loss determination—and consequent

---

[2] Although Ms. Conley describes her challenge to the loss calculation as a legal one, Aplt. Reply Br. at 3, the substance of her brief contests the factual basis for the loss number, Aplt. Br. at 10-18. For example, she argues the Government failed to present evidence supporting the loss amount and asks us to "remand for further findings" on the payments made and the value of recovered collateral. *Id.* at 17-18. The Government also treats her argument as factual, countering that her objection to the loss amount was "insufficient to trigger the district court's factfinding responsibilities." Aplee. Br. at 14. We may review a party's argument according to its substance rather than the party's characterization. *See, e.g.*, *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989); *Alcivar v. Wynne*, 268 F. App'x 749, 754 (10th Cir. 2008) (unpublished).
We cite the unpublished cases in this opinion for their persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Guidelines enhancement—only if the court's finding is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *United States v. Mullins*, 613 F.3d 1273, 1292 (10th Cir. 2010) (quotations omitted).

b. *Procedural reasonableness and the Guidelines*

"[W]e evaluate sentences imposed by the district court for reasonableness." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007); *see United States v. Booker*, 543 U.S. 220, 261-62 (2005). Ms. Conley challenges only the procedural reasonableness of her sentence. "Procedural reasonableness involves using the proper method to calculate the sentence." *Conlan*, 500 F.3d at 1169; *see Gall v. United States*, 552 U.S. 38, 51 (2007). "In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range . . . ." *United States v. Chee*, 514 F.3d 1106, 1116 (10th Cir. 2008) (quotations omitted); *see Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018).

"Any error in the Guidelines calculation renders a sentence procedurally unreasonable and, if the error is not harmless, requires remand." *United States v. Scott*, 529 F.3d 1290, 1300 (10th Cir. 2008); *see also Peugh*, 569 U.S. at 537. When the government is the "beneficiary of the error," it must prove harmlessness by a preponderance of the evidence. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262-63 (10th Cir. 2014) (quotations omitted).

c. *U.S.S.G. § 2B1.1*

U.S.S.G. § 2B1.1 provides a two-step formula to calculate the base offense level for § 1344 bank fraud convictions: (1) § 2B1.1(a) sets the base offense level, then (2) § 2B1.1(b) increases it based on specific offense characteristics.

Section 2B1.1(b)(1) increases the base offense level according to the "loss" caused by the offense.[3] To calculate loss, the sentencing court must take "the greater of actual loss or intended loss," U.S.S.G. § 2B1.1 cmt. n.3(A), then subtract certain "[c]redits" or deductions, *id.* § 2B1.1 cmt. n.3(E).

"Actual loss" is the monetary harm that resulted from the offense. *Id.* § 2B1.1 cmt. n.3(A)(i).[4] "Intended loss" is the monetary "harm that the defendant purposely sought to inflict," regardless of the harm actually inflicted. *Id.* § 2B1.1 cmt. n.3(A)(ii). The greater of these amounts is the starting point for the loss calculation. *Id.* § 2B1.1 cmt. n.3(A).

The sentencing court then deducts (1) the amount of "money returned . . . by the defendant . . . to the victim before the offense was detected," *id.* § 2B1.1 cmt. n.3(E)(i),[5]

---

[3] Section 2B1.1(b) calls for further adjustments based on other offense characteristics, but only § 2B1.1(b)(1) is relevant to this appeal.

[4] Actual loss is limited to "reasonably foreseeable" harm. U.S.S.G. § 2B1.1 cmt. n.3(A)(i), (iv).

[5] "The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected . . . ." U.S.S.G. § 2B1.1 cmt. n.3(E)(i).

and (2) the value of any collateral that the victim has recovered by the time of sentencing, *id.* § 2B1.1 cmt. n.3(E)(ii).[6]

In summary, loss is the greater of actual or intended loss, less (1) the money returned before detection of the offense and (2) the value of any collateral recovered before sentencing.[7]  The resulting amount determines the increase to the defendant's base offense level.  Relevant here, the sentencing court increases the base offense level by 12 if the loss is more than $250,000 and less than $550,000, and by 14 if the loss is more than $550,000 and less than $1,500,000.  *Id.* § 2B1.1(b)(1).

   d.  *PSR at sentencing*

Sentencing courts often rely on facts in the PSR.  Federal Rule of Criminal Procedure 32(i)(3) provides:

> At sentencing, the court:
>
> (A)   may accept any undisputed portion of the [PSR] as a finding of fact; [and]
>
> (B)   must—for any disputed portion of the [PSR] or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . .

---

[6] The value of the collateral is "the amount the victim has recovered . . . from disposition of the collateral" or, if the victim has not disposed of the collateral, "the fair market value of the collateral at the time of sentencing."  U.S.S.G. § 2B1.1 cmt. n.3(E)(ii).

[7] Loss = (the greater of actual or intended loss) – (the amount of money returned before detection of the offense) – (the value of any collateral recovered before sentencing).

"If a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant and the government need not produce additional evidence in support of the admitted fact." *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009). But "[w]hen a defendant objects to a fact in a [PSR]" and notifies the sentencing court that the fact is disputed, "the government must prove that fact at a sentencing hearing by a preponderance of the evidence." *United States v. Barnett*, 828 F.3d 1189, 1192 (10th Cir. 2016) (quotations omitted); *see* Fed. R. Crim. P. 32(i)(3). "The government can meet its burden by either presenting new evidence at sentencing or referring to evidence presented at trial." *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022).

A defendant objects to a fact in the PSR by "mak[ing] *specific allegations* of factual inaccuracy" rather than challenging only "the ultimate conclusions in the [PSR]" or "the inferences to be drawn" from the facts. *Barnett*, 838 F.3d at 1192-93, 1195 (quotations omitted). "[T]he test is whether the district court was adequately alerted to the [factual] issue." *United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014).

A sufficient objection may be "imprecise." *Id.*; *see United States v. E.F.*, 920 F.3d 682, 687 (10th Cir. 2019) ("All that is required to preserve an issue for appeal is that the party 'informs the court of the party's objection and the grounds for that objection.'" (alterations omitted) (quoting Fed. R. Crim. P. 51(b)). For example, we found it sufficient that a defendant said at sentencing, "There were several mistakes in . . . [t]he amounts that were on [the PSR]," and the district court confirmed that it understood the

defendant "disagree[d] with the probation officer's calculation." *Harrison*, 743 F.3d at 763.

### 2. Additional Procedural History

#### a. *PSR*

Ms. Conley's PSR calculated her loss as $1,020,591.62, which increased her base offense level by 14.  An addendum to the PSR explained that this number was calculated by taking the total amount of fraudulent loans that Ms. Conley sought ($1,028,643.00) and subtracting the value of one vehicle that was returned to a victim financial institution ($8,051.38).

#### b. *Written objections*

Ms. Conley received the draft PSR before her sentencing hearing.  She filed written objections in a letter to the Probation Office, in which she objected that the loss amount had not been reduced by the amounts paid on the loans or the value of recovered collateral.

#### c. *Sentencing hearing*

At the sentencing hearing, the district court stated that it had "reviewed [Ms. Conley]'s [written] objections" and believed that it "fully underst[ood]" the objection.  ROA, Vol. III at 40.[8]

---

[8] The Probation Office issued a revised PSR the morning of Ms. Conley's sentencing hearing.  The loss amount was changed from $1,028,643.00 to $1,020,591.62.

Ms. Conley told the court that she "maintain[ed] [her] objection with regard to the total loss for purposes of calculating the [Guidelines] enhancement on that basis." *Id.* She further explained that the commentary to U.S.S.G. § 2B1.1 "requires the court to reduce loss by any amounts, including the return of collateral or any money that is returned." *Id.* at 41. And she again stated her belief "that the loss amount should be reduced by any return of property or any collection of collateral." *Id.* at 42. She argued that the loss amount with the appropriate deductions would equal the restitution amount. *Id.* at 46.

The Government responded that Ms. Conley was "conflating intended loss and actual loss," *id.* at 46, and argued that her false lien releases meant that the "banks could not repossess their collateral," *id.* at 47. It said that "for sentencing [the court should] go by the intended loss." *Id.* The Government presented no evidence in support of the PSR's loss calculation, and the district court did not request it. *See id.*

The district court overruled Ms. Conley's objection. It "believe[d] the intended loss [wa]s calculated correctly and . . . all amounts that were credited ha[d] been deducted from the intended loss." *Id.* at 47-48. And it "d[id]n't think there[] [was] any way . . . to calculate the intended loss less than $550,000 based upon [the PSR]," which would be required for Ms. Conley to receive a 12-level increase to her offense level rather than a 14-level increase. *Id.* at 48. Finally, the court said that "for [Ms. Conley] to get credit for returned items or returned amounts . . . , she would have had to return that before detection, and that[] . . . doesn't seem to be the case." *Id.*

The district court then decided that "the [PSR] [would] form the factual basis for [its] sentence." *Id.* at 62. It calculated Ms. Conley's offense level as 19 with a criminal history category of I,[9] which resulted in a Guidelines range of 30 to 37 months. It sentenced her to 30 months in prison for bank fraud.

3. **Analysis**

a. *Sufficiency of objection and the Government's burden*

The Government argues Ms. Conley's objections to the PSR were "insufficient to trigger the district court's factfinding responsibilities." Aplee. Br. at 14. We disagree.

To determine whether her objections were sufficient, "the sole question is whether the district court was adequately alerted to the issue." *E.F.*, 920 F.3d at 687 (quotations omitted). Ms. Conley contested the loss amount in the PSR, insisting it did not include the appropriate deductions. The district court said it understood her to argue that "because her loans were collateralized . . . , because many of the loans were paid off with proceeds of new loans, and because various institutions recovered and/or set-off collateral, she's entitled to have the loss reduced in the amount of restitution." ROA, Vol. III at 46.

Because restitution includes only actual damages and makes deductions that are excluded from the loss calculation, *see* 18 U.S.C. § 3663A(b), Ms. Conley was incorrect that the district court should have used the restitution amount as the loss amount.

---

[9] The court started with the base offense level of 7 under U.S.S.G. § 2B1.1(a), added 14 levels under § 2B1.1(b), and subtracted 2 levels for acceptance of responsibility under § 3E1.1(a).

Nonetheless, she sufficiently alerted the district court that she disputed the PSR's loss calculation. *E.F.*, 920 F.3d at 687. Because her objections were sufficient under Rule 32(i)(3) and our case law, *see Barnett*, 828 F.3d at 1192-93; *E.F.*, 920 F.3d at 687; *Harrison*, 743 F.3d at 763, the Government was required to prove the loss amount at the sentencing hearing by a preponderance of the evidence.

    b.  *Clear error and procedural unreasonableness*

The district court clearly erred by adopting the PSR's loss calculation over Ms. Conley's objection without requiring the Government to prove it by a preponderance of the evidence. "We repeatedly have held that a district court may not satisfy its obligation to make a finding as to controverted factual allegations regarding sentencing by simply adopting the PSR as its finding." *United States v. Wilken*, 498 F.3d 1160, 1170 (10th Cir. 2007) (alterations and quotations omitted); *see also United States v. West*, 550 F.3d 952, 974 (10th Cir. 2008). Once Ms. Conley alerted the district court that she disputed the PSR's loss calculation, the Government was required to present evidence at the sentencing hearing to support it. *See McDonald*, 43 F.4th at 1095.

The district court's failure to hold the Government to its burden was procedurally unreasonable. "In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range . . . ." *Chee*, 514 F.3d at 1116 (quotations omitted); *see also Rosales-Mireles*, 138 S. Ct. at 1904 ("District courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." (alterations and quotations omitted)). To do so, it cannot rely on a disputed loss calculation that the Government failed to prove by a preponderance. *See Harrison*,

12

743 F.3d at 763-64. The court clearly erred in relying on unproven facts in the PSR, and it therefore abused its discretion by "selecting a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51.

c.  *Harmlessness*

The district court's error in relying on the PSR's loss amount to calculate Ms. Conley's Guidelines range was not harmless. A calculation error may be harmless if the district court nonetheless considers the correct Guidelines range. *See Kristl*, 437 F.3d at 1055; *United States v. Tom*, 494 F.3d 1277, 1282 (10th Cir. 2007). The court did not do so here.

At the close of the sentencing hearing, the district court said it would have reached the same Guidelines range even if it made the additional deductions urged by Ms. Conley. It said that it "d[id]n't think there[] [was] any way . . . to calculate the intended loss less than $550,000 based upon [the PSR]," which would have been required to increase Ms. Conley's base offense level by 12 rather than 14. ROA, Vol. III at 48. But this statement is "without factual support in the record." *Mullins*, 613 F.3d at 1292 (quotations omitted); *see United States v. Wieck*, No. 19-6075, 2021 WL 4949177, at *10-11 (10th Cir. Oct. 25, 2021) (unpublished) (remanding for resentencing when the district court made the unsupported finding that even with "a liberal deduction . . . , you're still left with a net number in excess of 550,000").

The Government failed to prove by a preponderance of the evidence that the properly calculated loss would still be above $550,000. *See Sanchez-Leon*, 764 F.3d at 1262-63. "[A] procedural error is not harmless if it requires us to speculate on whether

13

the court would have reached the same determination absent the error." *United States v. Gieswein*, 887 F.3d 1054, 1062 (10th Cir. 2018) (quotations omitted). Without record evidence supporting the PSR's loss calculation, we cannot say that the district court's error was harmless. We vacate Ms. Conley's sentence for bank fraud and remand for resentencing on those counts.[10]

## B. *Aggravated Identity Theft*

As described above, Ms. Conley pled guilty to aggravated identity theft. She now argues the district court plainly erred in finding a factual basis for her plea after *Dubin*. We affirm.

### 1. **Plain Error Standard of Review**

Ms. Conley did not object to the court's acceptance of her aggravated identity theft plea, so we review for plain error. *United States v. Olano*, 507 U.S. 725, 730 (1993). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial

---

[10] The district court also said that 30 months was "the same sentence [it] would impose if given the broadest possible discretion and the same sentence [it] would impose notwithstanding any judicial findings of fact by adoption of the [PSR] or at th[e] [sentencing] hearing." ROA, Vol. III at 76. We have "rejected the notion that district courts can insulate sentencing decisions from review by making such statements." *United States v. Burris*, 29 F.4th 1232, 1239 (10th Cir. 2022) (quotations omitted).

This case stands in contrast, for example, to *Sanchez-Leon*, in which we held the district court procedurally erred by failing to consider the defendant's deportability in sentencing. 764 F.3d 1248. There, we held the error was harmless based on the court's insistence that, even if it had considered deportability, it would have imposed the same sentence to avoid disparities with similarly situated defendants. *Id.* at 1264-66. The district court here did not provide a similar explanation. *See United States v. Peña-Hermosillo*, 522 F.3d 1108, 1117-18 (10th Cir. 2008) (concluding error was not harmless where district court failed to explain the reasoning behind alternative sentence of the same length).

rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotations omitted).

An error is plain when it is "clear or obvious under current, well-settled law" at the time of appeal, meaning "either the Supreme Court or this court [has] addressed the issue." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013) (quotations omitted). "[I]n certain circumstances, the weight of authority from other circuits may make an error plain . . . ." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quotations omitted).

2. **Legal Background**

a. *Factual basis for a guilty plea*

To enter judgment on a guilty plea, the court must determine there is an appropriate factual basis for the plea. Fed. R. Crim. P. 11(b)(3). "To determine whether a factual basis exists for the defendant's plea, the district court must compare the conduct admitted or conceded by the defendant with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime." *United States v. Gonzales*, 918 F.3d 808, 811-12 (10th Cir. 2019) (quotations omitted).

b. *Title 18 U.S.C. § 1028A: Aggravated identity theft*

Title 18 U.S.C. § 1028A(a)(1) provides:

> Whoever, during and in relation to any felony violation
> enumerated in [18 U.S.C. § 1028A(c), including bank fraud],
> knowingly transfers, possesses, or uses, without lawful
> authority, a means of identification of another person, shall,

15

in addition to the punishment provided for such felony, be
sentenced to a term of imprisonment of 2 years.

A signature is a "means of identification" for § 1028A. *United States v. Porter*, 745 F.3d 1035, 1042-43 (10th Cir. 2014).

c.   Dubin v. United States

In between Ms. Conley's sentencing and this appeal, the Supreme Court decided *Dubin v. United States*, 599 U.S. 110 (2023). In *Dubin*, the Court resolved a circuit split over when a defendant "uses" another's identification "in relation to" a predicate offense under 18 U.S.C. § 1028A(a)(1). *Id.* at 116. After defendant David Dubin conducted psychological testing on a patient, he submitted a bill to Medicaid that used the patient's name but falsely inflated the reimbursement amount. *Id.* at 114. He was charged under § 1028A with aggravated identity theft during and in relation to healthcare fraud. *Id* at 114-15.

The Court held that "§ 1028A(a)(1) is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the conduct criminal." *Id.* at 131. "[W]ith fraud or deceit crimes," the means of identification is at the crux of the conduct's criminality when it is "used in a manner that is fraudulent or deceptive . . . , [which] can often be succinctly summarized as [deception about] 'who' is involved." *Id.* at 131-32. Because "the crux of [Mr. Dubin's] fraud was a misrepresentation about . . . *how* and *when* services were provided to a patient, not *who* received the services," the Court held that the identification was not at the crux of his conduct and vacated his conviction. *Id.* at 132.

16

3.  **Analysis**

Ms. Conley argues the district court plainly erred in accepting her plea under Rule 11(b)(3) because her use of the employees' signatures to create fake lien releases was not at the "crux" of her fraud and thus, in light of *Dubin*, was not factually sufficient to constitute aggravated identity theft.  Aplt. Br. at 25-27.

Any error here was not plain.  Under the second prong of plain error review, we will reverse a district court's decision only if it is "contrary to well-settled law" at the time of the appeal.  *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000).  Accepting Ms. Conley's plea was not contrary to well-settled law.  Neither (1) the Supreme Court, (2) our circuit, nor (3) any other circuit has addressed the issue presented in Ms. Conley's case.

First, since *Dubin*, the Supreme Court has not applied its crux test or provided further guidance on how to do so.  And the facts in *Dubin* differ significantly from those here.  599 U.S. at 114.  Mr. Dubin treated the patients that he named in his reimbursement requests, changing only the amount of the reimbursement.  *Id.*  The Court relied on the distinction between "*how* and *when* services were provided . . . [and] *who* received the services."  *Id.* at 132.  By contrast, Ms. Conley falsified both the substance of the lien releases and who had authored them.

Second, this circuit has applied *Dubin*'s test only once in an unpublished decision, noting without explanation that the government met its burden to show a forged signature was "used in a manner that is fraudulent or deceptive" and "play[ed] a key role" in the crime.  *United States v. Herman*, Nos. 22-8057, 22-8061, 2023 WL 6861766, at *8 n.6

17

(10th Cir. Oct. 18, 2023) (unpublished) (quoting *Dubin*, 599 U.S. at 129, 132). *Herman* does not settle the law. Unpublished decisions are not precedential. 10th Cir. R. 32.1; *see also United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011) (finding "no controlling circuit . . . precedent" where neither of the relevant cases were "published or binding on this court or the district courts").

Further, *Herman* involved a scheme to "control[] a publicly traded company, artificially inflat[e] the value of the company's shares, and then sell[] [the] shares." 2023 WL 6861766, at *1. The defendant used a forged signature to create a "fake attorney-opinion letter." *Id.* at *2. We did not explain why this letter was at the "crux" of the defendant's criminal conduct or what evidence the government presented at trial to show the signature "play[ed] a key role" in the scheme. *Id.* at *8 n.

Third, as for other circuits, only the Eleventh and Fifth Circuits have applied *Dubin*'s test. The Eleventh Circuit did so in *United States v. Gladden*, 78 F.4th 1232 (11th Cir. 2023), which, like *Dubin*, was a healthcare fraud case that bears little factual resemblance to Ms. Conley's case. *See id.* at 1238-40, 1248. The Fifth Circuit applied *Dubin* to find that a defendant who forged employment paperwork was properly convicted of aggravated identity theft. *United States v. Croft*, Nos. 21-50380, 22-50659, 2023 WL 8292809 (5th Cir. Dec. 1, 2023). Neither case supports Ms. Conley's argument. And two opinions from our sister circuits do not constitute "the weight of authority from other circuits" needed to establish plain error. *Hill*, 749 F.3d at 1258.

Neither "the Supreme Court [n]or this court [has] addressed the issue" presented in Ms. Conley's case, *Brooks*, 736 F.3d at 930, and no other circuit court has applied

18

*Dubin*'s test to bank fraud.  Without more definitive legal authority, any error in accepting Ms. Conley's guilty plea cannot be plain.  We affirm.

### III.  CONCLUSION

We vacate Ms. Conley's sentence for bank fraud and remand for resentencing on her bank fraud convictions.  We affirm her convictions for aggravated identity theft.[11]

---

[11] We also deny Ms. Conley's motion to expedite as moot.