FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL MORALES LARA,

Defendant - Appellant.

No. 23-6057
(D.C. No. 5:21-CR-00076-SLP-8)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**\*
_____

Before **MATHESON**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Daniel Morales Lara pled guilty to drug conspiracy and aiding and abetting distribution of methamphetamine. On appeal, he challenges the district court's sentencing decisions denying him a mitigating role adjustment and imposing an enhancement because the methamphetamine was imported. Exercising jurisdiction under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291, we affirm.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A. *Factual History*

Oscar Hernandez-Flores operated an Oklahoma drug trafficking organization ("DTO") from Mexico.  The DTO imported liquid methamphetamine from Mexico to the United States, converted it into a solid, and distributed it in Oklahoma.

Mr. Hernandez-Flores directed family members and associates in Oklahoma City to conduct the DTO's activities there.  In 2020, he told a family member in Oklahoma City to expect a shipment of 80 kilograms of methamphetamine.  Another DTO member coordinated the delivery.

Mr. Lara and the other DTO member delivered the methamphetamine. Afterwards, they drove to a suspected stash house, entered the residence, and returned to the car with a bag.  When they drove away, law enforcement stopped their vehicle, searched it, and found $261,875 in cash.

### B. *Procedural History*

Mr. Lara pled guilty to drug conspiracy and aiding and abetting distribution of methamphetamine.  The relevant procedural history concerns his sentencing, beginning with the presentence investigation report ("PSR").

#### 1.  PSR and PSR Objections

Mr. Lara's PSR explained that a 2016 investigation had identified the Hernandez DTO as a supplier of the Irish Mob Gang ("IMG"), a gang based in Oklahoma prisons.  After describing Mr. Lara's role in the methamphetamine delivery, the PSR calculated Mr. Lara's base offense level as 38 under the United

States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). It recommended against a reduction under U.S.S.G. § 3B1.2 for playing a mitigating role in the offense. It also recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(5) because the methamphetamine was imported.

Mr. Lara objected to these recommendations.

## 2. Sentencing Memorandum

Mr. Lara submitted a sentencing memorandum, which further elaborated on his PSR objections. He argued that he should receive a mitigating role adjustment. He said that U.S.S.G. § 3B1.2 required the court to determine whether he was substantially less culpable than the average participant in the criminal activity, listed the five factors § 3B1.2 says courts should consider, and argued that the factors all weighed in his favor. He also argued the importation enhancement should not apply.

## 3. Sentencing

### a. *Mitigating role adjustment*

At sentencing, Mr. Lara relied on his sentencing memorandum regarding the mitigating role adjustment. App., Vol. 3 at 33.

The Government argued the mitigating role adjustment should not apply because Mr. Lara "jumped straight into the deep end" of the enterprise, which required a "level of trust" from top DTO members. *Id.* at 37; *see id.* at 36-38. It said "lots of individuals during the course of th[e] case . . . picked up drugs on multiple . . . occasions" but "none . . . ever possessed more methamphetamine than [Mr. Lara] possessed on that one day," which "show[ed] the significance, the trust, the import,

3

and the reliance that Oscar Hernandez[-Flores] put on somebody like [Mr. Lara] to protect his goods, to protect his money, and to get them to where [they] needed to be." *Id.* at 38. It concluded that Mr. Lara's "actions in this case [did not] represent a level of criminality of a lesser degree than the average defendant," and instead, he was "a very important trusted part of th[e] organization." *Id.*

The district court denied the mitigating role adjustment. *Id.* at 43. It found Mr. Lara had "jumped straight into the deep end" of the DTO and "clearly had the trust of the[] individuals" in the DTO because "he was involved and privy to the transportation, not only of a substantial amount of money, but also . . . the transportation of a substantial amount of methamphetamine." *Id.* at 42. The court also explained it was "not uncommon" for DTO members to be "responsible for [only] the transportation or handling of money," but these individuals "often" do not handle the amount of money involved here, and Mr. Lara "transcend[ed] people in those positions by . . . also . . . transport[ing] . . . a substantial amount of methamphetamine." *Id.*

The court concluded from "looking at the circumstances as described in the presentence report and as argued by the government, . . . that [Mr. Lara] was involved enough, and did have enough of a role" to not receive the mitigating role adjustment. *Id.* at 42-43.

b. *Importation enhancement*

Mr. Lara argued he did not know and could not have reasonably foreseen that the drugs were imported from Mexico. *Id.* at 31-33.

4

The Government noted that Mr. Lara did not challenge that the DTO imported the drugs from Mexico. *Id.* at 34. It also argued that he knew or reasonably should have known the methamphetamine was imported, *id.* at 34-36, and by working for the DTO, Mr. Lara "[wa]s a part of th[e] very primary chain of custody . . . between Mexico and the United States, *id.* at 36. The Government also observed that the Hernandez DTO supplied the IMG. *Id.*

The district court imposed the importation enhancement. *Id.* at 40. It said that § 2D1.1(b)(5) does not require that Mr. Lara knew or should have known the methamphetamine was imported. *Id.* It further held that "even if the knowledge requirement were to apply," there was "a fair probability that [Mr. Lara] actually knew that the methamphetamine was from Mexico," and "even if not, certainly, . . . he should have reasonably known the methamphetamine was being imported from Mexico." *Id.*

c. *Sentence*

The district court, after explaining it had "fully reviewed" Mr. Lara's "robust" sentencing memorandum, *id.* at 29-30, overruled Mr. Lara's objections, *id.* at 40-43. It determined Mr. Lara's advisory Guideline range was 210 to 262 months and that Mr. Lara preserved his objections. *Id.* at 43-44. The court sentenced him to 180 months in prison.

## II.  DISCUSSION

On appeal, Mr. Lara challenges the procedural reasonableness of his sentence. He argues the district court erred in analyzing the mitigating role adjustment and in

5

determining the importation enhancement did not require scienter.  Aplt. Br. at 29-37, 42-57.

"Procedural reasonableness addresses whether the district court incorrectly calculated . . . the Guidelines sentence . . . or failed to adequately explain the sentence." *United States v. McCrary*, 43 F.4th 1239, 1244 (10th Cir. 2022) (quotations omitted).  "[T]he overarching standard for our review of the procedural reasonableness of the court's sentence is abuse of discretion . . . ." *United States v. Nkome*, 987 F.3d 1262, 1268 (10th Cir. 2021).

"[W]e review de novo the district court's legal conclusions regarding the guidelines . . . ." *Id.* (quotations omitted).  "[A] district court commits legal error when it applies the wrong test in making a factual finding at sentencing," and "[a]n error of law is per se an abuse of discretion." *Id.* at 1269 (quotations omitted).

We review the district court's "factual findings for clear error." *Id.* at 1268 (quotations omitted).  "[W]e will not reverse the district court unless the court's finding was without factual support in the record or if after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made." *United States v. Delgado-Lopez*, 974 F.3d 1188, 1191 (10th Cir. 2020) (quotations omitted).

## A. *Mitigating Role Adjustment*

Mr. Lara argues the district court erred in several ways when it denied him the mitigating role adjustment.  Aplt. Br. at 29-37.  We disagree and affirm the district court.

1. **Legal Background**

   a. *U.S.S.G. § 3B1.2*

The Guidelines instruct courts to apply a mitigating role adjustment when a "defendant . . . plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 n.3(A). Section 3B1.2 calls for a four-level decrease "[i]f the defendant was a minimal participant," a two-level decrease "[i]f the defendant was a minor participant," and a three-level decrease if the defendant was "between" a minimal and minor participant.

A minimal participant is "plainly among the least culpable of those involved in the conduct of a group." *Id.* § 3B1.2 n.4. A minor participant is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 n.5.

"[T]he crux of [the mitigating role adjustment] is a defendant's relative culpability." *Nkome*, 987 F.3d at 1273 (quotations omitted). In determining whether the defendant was "substantially less culpable," U.S.S.G § 3B1.2 n.3(A), the district court "should consider" five "non-exhaustive" factors:

> (i)  the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

       (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

       (v)    the degree to which the defendant stood to benefit from the criminal activity.

*Id.* § 3B1.2 n.3(C).

    b.  *Preservation*

To preserve "any alleged procedural flaw," a "defendant must . . . contemporaneously object in the district court to the *method* by which the district court arrived at a sentence." *United States v. Wireman*, 849 F.3d 956, 961 (10th Cir. 2017) (quotations omitted); *United States v. Yurek*, 925 F.3d 423, 444 (10th Cir. 2019) (same).

In *United States v. Lopez-Flores*, 444 F.3d 1218 (10th Cir. 2006), we held the defendant failed to preserve his appellate sentencing challenge because he did not contemporaneously object in the district court to the "method by which" it determined his sentence. *Id.* at 1220-21 (emphasis omitted). We emphasized that a proper "contemporaneous objection" "can alert the district court and opposing counsel, so that a potential error can be corrected, obviating any need for an appeal." *Id.* at 1221. "[F]or example," had the defendant contemporaneously objected that the district court "had not adequately explained [his] sentence" under the 18 U.S.C. § 3553(a) factors, the objection "would have enabled the court . . . to consider th[e] [§ 3553 factors] or to state affirmatively that the factors had been considered." *Id.*

In *Yurek*, the defendant argued on appeal that the district court applied the wrong legal test when it denied the mitigating role adjustment. 925 F.3d at 444. She asserted that "she preserved the issue by objecting to the presentence report," despite her failure to raise the issue at sentencing. *Id.* We held the defendant failed to preserve this argument, stating that she "alleg[ed] an error in the district court's explanation, not in the content of the presentence report," so "objecting to the presentence report would not have alerted the district court to an error in its explanation." *Id.*

When a defendant fails to object at sentencing to the procedural reasonableness of the sentence, we generally review only for plain error. *United States v. Eddington*, 65 F.4th 1231, 1240 (10th Cir. 2023). "To establish plain error, [the appellant] must show that (1) the district court erred, (2) the error was plain, (3) the error affected [his] substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Miller*, 978 F.3d 746, 757 (10th Cir. 2020) (quotations omitted). Failure to argue plain error on appeal waives the issue. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise.").

9

2. **Application**

Mr. Lara asserts the district court "legally erred . . . in two ways," Aplt. Br. at 29—first, by comparing him to individuals "outside th[e] criminal scheme," *id.* at 32, and second, by "failing to identify the 'average,' or 'mathematical' middle participant" and then compare him against this participant, *id.* at 29. We read Mr. Lara's brief to make a third argument—that the court failed to consider § 3B1.2's five factors and that each factor weighed in his favor. *Id.* at 32-36; *see also United States v. Conley*, 89 F.4th 815, 819 n.2 (10th Cir. 2023) ("We may review a party's argument according to its substance rather than the party's characterization."), *cert. denied*, No. 23-7046, 2024 WL 1607958 (Apr. 15, 2024). We address each argument in turn.

a. *Comparisons*

Mr. Lara argues the court erroneously compared him against individuals "outside th[e] criminal scheme." Aplt. Br. at 32. He waived this argument.

After the district court denied him the mitigating role adjustment, Mr. Lara said that he "preserv[ed] [his] objections." App., Vol. 3 at 44. But he never objected to the court's comparisons—the "method by which" it arrived at the sentence. *Lopez-Flores*, 444 F.3d at 1220. His PSR objections did not "alleg[e] an error in the district court's explanation." *Yurek*, 925 F.3d at 444. Neither did his sentencing memorandum, which described the relevant legal standards and argued he should receive the mitigating role adjustment. The memorandum did not, and could not,

10

argue that the court had erroneously made comparisons because the court had not yet done so.

Mr. Lara therefore did not "alert the district court" to his belief that it had incorrectly compared him to individuals outside of the criminal activity, such that it could "correct[]" the "potential error." *Lopez-Flores*, 444 F.3d at 1221; *see United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) ("[T]he test is whether the district court was adequately alerted to the issue."). Because Mr. Lara failed to contemporaneously object to the method by which the court compared him to others, and because he does not argue plain error on appeal, he has waived this argument. *See Yurek*, 925 F.3d at 445; *Leffler*, 942 F.3d at 1196.

Even if we were to overlook waiver, his argument also fails on the merits.

First, Mr. Lara argues the court improperly compared him to members of the IMG, "a tangentially related but wholly different conspiracy and criminal scheme." Aplt. Br. at 32. The court did not erroneously compare him to the IMG because the court never mentioned the IMG. *See* App., Vol. 3 at 3-63. The PSR did not compare Mr. Lara to IMG members, and the Government mentioned the IMG only briefly when discussing the importation enhancement. There is thus no "indication in the record" that the court improperly compared Mr. Lara to the IMG. *Nkome*, 987 F.3d at 1273 (quotations omitted).

Second, Mr. Lara argues the court erroneously compared him to a "generalized individual" in a DTO "who transports only money." Aplt. Br. at 32; *see also id.* at 18. At sentencing, the court said Mr. Lara "transcends" such an individual because

he transported a large amount of methamphetamine. App., Vol. 3 at 42. This comparison, even if error, was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). !

The court denied the mitigating role adjustment based on "the circumstances as described in the presentence report and as argued by the government," not based on any comparison to a generalized individual. App., Vol. 3 at 42-43. The PSR and the Government described Mr. Lara's relative role in the criminal activity—detailing the individuals involved, their actions during the methamphetamine delivery, and Mr. Lara's place in the DTO hierarchy. The court therefore properly assessed Mr. Lara's relative role, and any reference to a "generalized individual," Aplt. Br. at 32, did not affect the court's decision to deny the mitigating role adjustment.[1]

b. *Mathematical middle participant*

Mr. Lara argues the district court erroneously "fail[ed] to identify the 'average' or 'mathematical' middle participant[] and compare Mr. Lara's culpability" to this participant. *Id.* at 29. Mr. Lara waived this argument. As explained previously, his PSR objections and sentencing memorandum did not object to the court's method in analyzing the mitigating role adjustment. His memorandum did

---

[1] *See United States v. Eaton*, No. 22-5061, 2023 WL 2336703, at *2 (10th Cir. Mar. 3, 2023) (unpublished) (affirming when an error did not affect the district court's ultimate decision).

Unpublished opinions are cited in this order and judgment for their persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

not even attempt to identify an average participant or say the court needed to do so on the record. He does not argue plain error on appeal.

Again, even if we were to overlook waiver, his argument also fails on the merits. The Guidelines do not require a court to identify a mathematical middle participant on the record. *See* U.S.S.G. § 3B1.2.

c. *Section 3B1.2's five factors*

Mr. Lara argues the district court legally erred in failing to consider the five § 3B1.2 factors and factually erred in finding the factors weighed against him. Aplt. Br. at 33-36. He preserved these arguments because his sentencing memorandum described the five factors and argued each of them favored him, and he "preserv[ed] [his] objections" at sentencing. App., Vol. 3 at 44.

i. Legal argument

Mr. Lara's legal argument fails because the court did not need to expressly address § 3B1.2's five factors. Omission of express references to the factors does not mean it "considered none of the factors." Aplt. Br. at 33. Under our precedent, we presume the court considered the factors absent an indication otherwise. *Nkome*, 987 F.3d at 1273. Also, the court's comments at Mr. Lara's sentencing indicate that it considered the factors. It found that Mr. Lara "jumped straight into the deep end" of the DTO and "clearly had the trust of" DTO members because he transported "a substantial amount of money" and "a substantial amount of methamphetamine." App., Vol. 3 at 42. These findings speak to "the degree to which [he] understood the scope and structure of the criminal activity," "the degree to which [he] participated in

13

planning or organizing the criminal activity," and "the nature and extent of [his] participation in the commission of the criminal activity." U.S.S.G. §§ 3B1.2 n.3(C)(i), (ii), (iv).

    ii. Factual argument

The district court denied a mitigating role adjustment. App., Vol. 3 at 43. We review for clear error. *See Nkome*, 987 F.3d at 1268 (10th Cir. 2021) ("The [district] court's denial of a mitigating-role adjustment is a factual determination and, accordingly, we review it for clear error."). The court did not clearly err. The PSR and the Government's evidence supported the court's decision. Mr. Lara argues the court should have weighed the five factors differently and should have granted him the adjustment, but the court's analysis does not leave us "with the definite and firm conviction that a mistake has been made." *Delgado-Lopez*, 974 F.3d at 1191 (quotations omitted).

### B. *Importation Enhancement*

Mr. Lara argues the district court erroneously held the importation enhancement does not require scienter. Aplt. Br. at 21-22, 42-56. Because he fails to challenge the district court's alternative grounds for applying the enhancement, we affirm.

### 1. **Legal Background**

    a. *U.S.S.G. § 2D1.1(b)(5)*

U.S.S.G. § 2D1.1(b)(5) states that the court should increase the base offense level by two "[i]f . . . the offense involved the importation of . . . methamphetamine

14

or the manufacture of . . . methamphetamine from listed chemicals *that the defendant knew were imported unlawfully*." *Id.* (emphasis added).

The Guidelines do not specify whether the knowledge requirement applies only to "the manufacture of . . . methamphetamine from listed chemicals" or whether it applies also to "the importation of . . . methamphetamine." *Id.* We have not resolved this question. *See United States v. Redifer*, 631 F. App'x 548, 565 (10th Cir. 2015) (unpublished) (declining to decide the issue); *United States v. Beltran-Aguilar*, 412 F. App'x 171, 175 n.2 (10th Cir. 2011) (unpublished) (declining to resolve the issue but noting that the Guideline "appear[ed] to impose a scienter requirement only when" the offense involved the importation of listed methamphetamine precursors).

b. *Preservation*

"Our law is clear: The first task of an appellant is to explain to us why the district court's decision was wrong." *United States v. Martinez*, 92 F.4th 1213, 1265 (10th Cir. 2024) (quotations omitted). Thus, "[i]f the district court states multiple alternative grounds for its ruling and the appellant does not challenge all those grounds in the opening brief, then we may affirm the ruling." *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 763 (10th Cir. 2020).[2] We may affirm on an

---

[2] *See also GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655, 665-66 (10th Cir. 2020) (unpublished) (explaining "[w]e must uphold the district court's unchallenged" alternative ground because the appellant did not "meaningfully address" it in the opening brief despite "expressly grappl[ing]" with it on reply); *N8 Med., Inc. v. Colgate-Palmolive Co.*, 727 F. App'x 482, 488 (10th Cir. 2018)

unchallenged alternative ground because "the second alternative stands as an independent and adequate basis, regardless of the correctness of the first alternative." *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 613 n.7 (10th Cir. 2008).[3]

### 2. Application

Mr. Lara challenges the district court's determination at sentencing that the importation enhancement does not require scienter. Aplt. Br. at 21-22, 42-56. But the court also applied the enhancement for two alternative reasons that Mr. Lara fails to challenge on appeal.

After stating that the importation enhancement does not require scienter, the district court continued: "[E]ven if the knowledge requirement were to apply . . . , there is a fair probability that [Mr. Lara] actually knew that the methamphetamine was from Mexico," and "even if not, certainly . . . he should have reasonably known the methamphetamine was being imported from Mexico." App., Vol. 3 at 40; *see*

---

(unpublished) (finding the appellant's failure to address the district court's alternative ground in its opening brief "constituted a waiver" and the appellant addressing it on reply "was too late to prevent a waiver"); *United States v. Barela*, 561 F. App'x 738, 740 (10th Cir. 2014) (unpublished) (same).

[3] *See also Martinez*, 92 F.4th at 1265 ("[A]bsent . . . a challenge [to the district court's alternative ground], we may uphold the district court judge's ultimate decision . . . without reaching the merits."); *United States v. Wells*, 38 F.4th 1246, 1262 n.12 (10th Cir. 2022) ("When a district court rejects a claim on . . . independent grounds, an appellant must challenge each ground or risk waiver of the issue generally."); *Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1252 (10th Cir. 2009) ("When an appellant does not challenge a district court's alternate ground for its ruling, we may affirm the ruling.").

*also id.* at 41 ("[H]e certainly should have reason to know that the drugs were being imported from Mexico."). The court therefore determined that two adequate alternative grounds justified the enhancement. *See Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996) (finding the district court relied on an alternative rationale the appellant needed to challenge when it held that "even if [the appellant] could establish that she was incapable of performing her past relevant work," she could perform other jobs (quotations omitted)).[4]

Mr. Lara needed to challenge the district court's alternative grounds or "necessarily lose[]." *Shook*, 543 F.3d at 613 n.7; *see also United States v. Trujillo*, 247 F. App'x 139, 145 (10th Cir. 2007) (unpublished) ("Where an appellant challenges only one of two alternative rationales supporting a particular decision, the appellant's success on appeal is foreclosed, regardless of the merits of his arguments relating to the challenged ground."). He does not challenge the district court's alternative knowledge grounds in his opening brief. *See* Aplt. Br. 21-22, 43-56. Failure to brief an issue in the opening brief generally waives the issue. *See Rivero*, 950 F.3d at 763-64.

---

[4] *See also Murdock Acceptance Corp. v. United States*, 350 U.S. 488, 490 (1956) ("The District Court also based its decision on the alternative ground that, even if the requirements of the statute were technically met, remission would be denied in the discretion of the court."); *United States v. Battle*, No. 21-3128, 2022 WL 484031, at *1-2 (10th Cir. Feb. 17, 2022) (unpublished) (finding the district court relied on an alternative rationale that the appellant needed to challenge when it held that "[e]ven if [the appellant] could establish an extraordinary and compelling reason, the § 3553(a) factors would not support a reduction in sentence" (quotations omitted)).

Mr. Lara asserts in his reply brief that he did not need to challenge the alternative grounds because the district court held there was a "fair probability" that Mr. Lara actually knew the methamphetamine was imported, which "[f]all[s] short" of the preponderance of the evidence standard governing sentencing enhancements. Aplt. Reply Br. at 8 (quotations omitted).  This argument fails for three reasons.

First, Mr. Lara cites no authority for his argument that we must evaluate the merits of the district court's alternative grounds to determine whether he needed to challenge them on appeal.  *See id.* at 8-9.  His argument appears to be an ill-fated back-door attempt to avoid the fact that he waived such a challenge.

Second, even if Mr. Lara's argument, raised for the first time in his reply brief, can be read as challenging the district court's alternative grounds, "[i]n this Circuit, we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived." *Leffler*, 942 F.3d at 1197; *see also Rivero*, 950 F.3d at 763 (affirming because "[t]he opening brief d[id] not even mention th[e] alternative ground").  Mr. Lara does not argue plain error.  *See Spratling v. Sovereign Staffing Grp., Inc.*, 771 F. App'x 845, 845 (10th Cir. 2019) (unpublished) (declining to consider the appellant's challenge to an alternative ground raised for the first time in his reply brief because he "did not urge plain error").

Third, Mr. Lara's "fair probability" argument does not contend with the district court's additional alternative ground:  "that he certainly should have reason to know that the drugs were being imported from Mexico."  App., Vol. 3 at 41.

## III. **CONCLUSION**

We affirm.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge