**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES ROBERT CLARK,

    Defendant - Appellant.

No. 24-1215
(D.C. No. 1:23-CR-00502-DDD-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

In this appeal, Defendant-Appellant James Robert Clark challenges the

procedural reasonableness of the district court's imposition of a special condition of

supervised release—a requirement to participate in a sex-offense-specific "evaluation

and/or treatment program"—as part of his sentence following a guilty plea for

attempted bank robbery. ROA Vol. I at 65. Mr. Clark argues the district court ran

afoul of Federal Rule of Criminal Procedure 32(i)(3)(B)'s command that a sentencing

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

court faced with "any disputed portion of the presentence report" either "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Specifically, he asserts the district court violated this rule when it (1) declined to resolve his objection to the veracity of an arrest warrant application and supporting affidavit (the "Warrant Affidavit," or the "hands-on allegations") from a prior sex offense that was quoted in his presentence investigation report ("PSR"), and (2) relied on those contents to impose the sex-offense-specific special condition of supervised release.

Exercising jurisdiction under 28 U.S.C. § 1291, we agree with Mr. Clark that the district court committed legal error by neither requiring the Government to prove the veracity of the disputed Warrant Affidavit nor ignoring that information altogether as required by Rule 32(i)(3)(B). And because the Government has not shown this procedural error was harmless by a preponderance of the evidence, we vacate Mr. Clark's sentence and remand for resentencing.

## I.    BACKGROUND

### A.    The offense[1]

On December 13, 2023, Mr. Clark entered a bank in Commerce City, Colorado, and handed a bank teller a note that read "ALL THE MONE [sic] IN BOTH DRAWERS, NO DIE PACKS, NO TRACERS!! DON'T PUSH THE

---

[1] All facts regarding the offense conduct are drawn from Mr. Clark's guilty plea and statement of facts.

ALARM." ROA Vol. I at 22. The "teller attempted to access the money contained in the drawers but was unsuccessful in doing so. Eventually, Mr. Clark retrieved the note and left the bank without any money or thing of value." *Id.*

Less than a week later, on December 19, 2023, Mr. Clark was indicted on one count for a violation of 18 U.S.C. § 2113(a) for attempting to take, by force and violence or by intimidation, money in the possession of an FDIC-insured bank. Two months later, on February 21, 2024, Mr. Clark pleaded guilty to that count, and the district court accepted the plea.

### B.    The PSR and objections thereto

In April 2024, the probation office filed Mr. Clark's PSR, which detailed Mr. Clark's lengthy criminal history—five juvenile convictions and twelve adult convictions—including a bank robbery conviction in 2012. Additionally, the PSR noted another bank robbery incident in 2019 in which prosecutors dropped a robbery count in exchange for Mr. Clark's guilty plea to aggravated assault based on Mr. Clark having grabbed a police officer's gun after the robbery.

Relevant here, the PSR also detailed Mr. Clark's 2008 conviction on a guilty plea to attempted sexual assault of a child. Instead of excerpting the facts Mr. Clark admitted in connection with the guilty plea, the PSR quoted a portion of the Warrant Affidavit, which described in depth the unproved allegations of sexual assaults of a ten-year-old boy in 2003.

The PSR further summarized the contents of a discharge summary and psychosexual evaluation rendered by a treatment provider who treated Mr. Clark

3

pursuant to a special condition imposed as part of Mr. Clark's sentence for a 2023 supervised release violation. That condition, like the condition at issue here, required Mr. Clark to complete a sex-offense-specific evaluation and/or treatment. Based on the provider's conclusion that Mr. Clark's risk of "sexual reoffending is high," ROA Vol. II at 29, and "the nature of the defendant's prior sexual offense," the probation office recommended that the court impose a sex-offense-specific special condition of supervised release—namely, that Mr. Clark undergo "a sex offender evaluation and treatment," *id.* at 39.

Mr. Clark timely filed written objections to the PSR. Relevant to this appeal, Mr. Clark objected to "the inclusion of a *verbatim* account of the Affidavit and Application for Arrest Warrant," asserting "the allegations are inaccurate and untrue." ROA Vol. I at 36. Mr. Clark stressed that "[h]e did not admit to those allegations in 2008, and he does not admit to them in 2024." *Id.*

Mr. Clark further objected to the PSR's recommendation that the court impose a sex-offense-specific special condition of supervised release, claiming the "condition is not reasonably related to the factors set forth in 18 U.S.C. § 3553(a) and involves a greater deprivation of liberty than is reasonably necessary to achieve the purposes of deterring criminal activity, protecting the public, and promoting Mr. Clark's rehabilitation." *Id.* at 37; *see* 18 U.S.C. § 3583(d). In essence, Mr. Clark noted that his sole "sex offense occurred 21 years ago and has not been repeated

4

since," and argued the special condition could not be supported by such a temporally remote, isolated conviction.[2] *Id.* at 37–39.

The probation office stood by its recommendation of the sex-offense-specific condition in its addendum to the PSR, responding in part to Mr. Clark's objection to the condition by appending the full psychosexual evaluation and discharge summary (the "treatment materials") that were referenced in the PSR. Like the PSR, the treatment materials excerpted the contents of the Warrant Affidavit under headings variously titled "Reason for Referral" or "Summary of Referring Sexual Behaviors." ROA Vol. II at 81–82, 100–01. But those sections of the treatment materials went beyond the disputed excerpt of the Warrant Affidavit, including additional allegations by the victim's mother that Mr. Clark also sexually assaulted her daughter, the victim's sister. Those materials further reflect that the provider wrongly believed that "the referring sexual offense" was Mr. Clark's "guilty plea to sexually assaulting two minor-aged children, male and female siblings." *Id.* at 97.[3] The provider expressly incorporated this factual misapprehension into her risk assessment, explaining that one contributor to "Mr. Clark's risk for further

---

[2] Mr. Clark presses this argument on appeal in the alternative to his procedural reasonableness challenge. Because we agree that Mr. Clark has shown reversible error under his procedural reasonableness argument, we do not analyze his alternative, statutory challenge. As a result, we deny as moot Mr. Clark's motion that we take judicial notice of a state court order that is relevant only to this challenge. ECF No. 31.

[3] Elsewhere in these materials, the provider more precisely describes the "referring sexual offense" as "Attempted Sex Assault/Child." ROA Vol. II at 90.

inappropriate sexual behavior include[s] . . . having victims of a variety of genders." *Id.* at 103; *see also id.* at 98, 104 (asserting Mr. Clark "engaged in sexually abusive behaviors with two minors"). In fact, Mr. Clark had pleaded guilty to one charge of attempted sexual assault of a child.

### C.    *The sentencing hearing*

On May 17, 2024, the district court held a sentencing hearing. As to Mr. Clark's objection to the PSR's inclusion of the allegations from the Warrant Affidavit, the district court stated that it "underst[ood] . . . that the defendant does not admit to any of the allegations in that affidavit, but the presentence report is clear that those are simply allegations, not necessarily findings that those facts are true." ROA Vol. IV at 35–36. Having taken Mr. Clark's position "into account," the district court overruled the objection. *Id.* at 36.

After Mr. Clark's counsel argued at length that the sex-offense-specific condition should not be imposed, the court expressed concern about disagreeing with the recidivism risk assessments of "the professionals." *Id.* at 46.

> I don't feel comfortable – these people are licensed by the State. They're frequently used to tell us not just what's best for him – that's part of the concern. But part of the reason for treatment, sex offender treatment in particular, is to protect the public, which is part of my consideration. And if they're not comfortable saying he's – he's safe, not a high risk, then I don't know how I can sort of overcome that.

*Id.* at 46–47.

As to the special condition, Mr. Clark's counsel responded that in the discharge summary, "the experts themselves . . say he is not an appropriate candidate

for the exact treatment that they're asking you to impose." *Id.* at 47. Specifically, Mr. Clark noted that, in the treatment materials, the provider maintained a uniform position that an individual who denies having engaged in sexually abusive conduct should be placed "in a 90-day intervention denier's program," and at the end of that program, "should he still be denying the referring conduct, he is not a candidate for treatment and he should be referred to the court for the court to decide what to do about it." *Id.* at 48; *see* ROA Vol. II at 104 (stating in discharge summary that because "Mr. Clark continues to lack accountability or responsibility for his convicted behaviors," he "is not an appropriate candidate for sex offense-specific treatment"); *id.* at 97 (psychosexual evaluation recommending the Intervention Denier's program and stating that if "Mr. Clark attends treatment and remains in denial of his offense after three months" in the program, he "should be assessed for a possible referral to the Court" because "further treatment would not be appropriate"). In light of these uniform treatment guidelines, Mr. Clark argued, if the district court imposed the sex-offense-specific special condition, he would again be discharged after ninety days in the Intervention Denier's program along with a "referral" to the court because he disputes the allegations contained in the Warrant Affidavit: "we'll be back here again doing the same thing, talking about how he participated in the program and they discharged him." ROA Vol. IV at 49.

Mr. Clark's counsel further directed the court to the inclusion of the allegations contained in the Warrant Affidavit in the treatment materials, explaining that Mr. Clark objected to the Warrant Affidavit in the PSR because "that's the

referring sexual conduct that" the treatment materials were "talking about." *Id.* at 44.

"That's what he's saying he didn't do. He didn't plead to it, he wasn't convicted of it,

and he's consistently denied those extraneous allegations." *Id.*

The district court ultimately imposed the special condition, explaining that it

was necessary

> because I am concerned, ***based on what's been alleged, what may have happened***, and the criminal history here, that Mr. Clark – that it's necessary to protect the public to ensure that Mr. Clark is not a danger to reoffend. Given how much of his time has been spent behind bars, given that he's categorized as a high risk, I simply can't find that it's not necessary to at least go through that evaluation process.
>
> . . . . I hope Mr. Clark will understand it's not because of some stigma ***or even because necessarily I believe he is guilty of all these things.*** It's because something happened in his past, and I want to make sure he moves beyond it.

*Id.* at 55 (emphasis added).

This timely appeal followed.

## II.　　DISCUSSION

Although a district court may consider expansive categories of information at

sentencing, this broad scope is constrained by due process considerations. *See* 18

U.S.C. § 3661 ("No limitation shall be placed on the information concerning the

background, character, and conduct of a person convicted of an offense which a court

of the United States may receive and consider for the purpose of imposing an

appropriate sentence."); *United States v. Jones*, 640 F.2d 284, 286 (10th Cir. 1981)

(observing that the district court's "right to conduct a broad inquiry prior to

sentencing" is "subject to constitutional limitations," including the defendant's "due

8

process right to be sentenced only on information which is accurate"). The "well-established" due process right to be sentenced based on accurate information "is provided by" Rule 32(i)(3)(B). *United States v. Vazquez-Garcia*, 130 F.4th 891, 898 (10th Cir. 2025).

Under that rule, a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). Under our precedent, a defendant triggers the "district court's Rule 32 fact finding obligation" at sentencing when he "make[s] specific allegations of factual inaccuracy." *United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022) (quotation marks omitted). In the face of such allegations of factual inaccuracy, the district court must either ignore the disputed fact entirely, or "the government must prove that fact at a sentencing hearing by a preponderance of the evidence." *United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) (quotation marks omitted).

Mr. Clark asserts that the district court ran afoul of this rule when it "speculated" as to the veracity of the Warrant Affidavit in explaining its reasons for imposing the challenged condition. Appellant's Br. at 17.

The Government responds that (1) Mr. Clark's objection to the Warrant Affidavit did not trigger the district court's Rule 32(i)(3)(B) fact-finding obligations, (2) even if it did, the district court complied with the rule by assuming the Affidavit's

contents were false, and (3) even if the district court erred under the rule, such error was harmless.

We review this preserved claim of procedural error for abuse of discretion, evaluating factual findings for clear error and legal determinations de novo. *See United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012); *see United States v. Warren*, 737 F.3d 1278, 1283 (10th Cir. 2013) ("Procedural reasonableness also requires that the district court afford[] the defendant his rights under the Federal Rules of Criminal Procedure." (alteration in original) (internal quotation marks omitted)). As we now explain, we conclude that Mr. Clark's objection triggered the district court's obligations under Rule 32, the district court failed to comply with the rule, and the error was not harmless.

### A.    Whether Mr. Clark's objection triggered Rule 32(i)(3)(B)

Recall that Mr. Clark objected to the Warrant Affidavit's inclusion in the PSR as follows:

> [Mr. Clark] objects to . . . the inclusion of a *verbatim* account of the Affidavit and Application for Arrest Warrant from his prior conviction . . . . Mr. Clark asserts that the allegations are inaccurate and untrue. He did not admit to those allegations in 2008, and he does not admit to them in 2024.

ROA Vol. I at 36. Notwithstanding this unambiguous factual challenge to the Warrant Affidavit, the Government suggests that Mr. Clark's "objection was likely not sufficient to trigger the court's Rule 32 fact-finding obligation at all" because he did not argue "that the report inaccurately reported the allegations." Appellee's Br. at 16. To trigger the Rule 32 procedure, the Government claims, Mr. Clark needed to

10

"object that the presentence report mischaracterized the facts recited in the arrest warrant or misquoted it." *Id.* at 15–16.

The Government provides no authority for the proposition that Rule 32(i)(3)(B) contemplates only disputes regarding the "mischaracteriz[ation]" or "misquot[ation]" of facts in a PSR. Appellee's Br. at 15. True, the Government gestures to *McDonald*, in which we held that a district court's Rule 32 fact-finding obligation is not triggered where a defendant's objections to a PSR "contend only that the source of the information was not credible or reliable" rather than claiming "that the facts contained in the report are untrue." 43 F.4th at 1096. That kind of challenge, we observed, did not amount to "specific allegations of factual inaccuracy," reasoning that an attack on "a witness's credibility or reliability is different than asserting that their statements or information are false." *Id.* at 1096–97. And the Government claims, without explanation, that Mr. Clark's objection "is more a challenge to the credibility of the information in the report" like the objection in *McDonald*. Appellee's Br. at 16.

But Mr. Clark's objection made no challenge to the credibility of *the source* of the disputed information, as in *McDonald*, and instead unambiguously denied the facts contained in the Warrant Affidavit: "Mr. Clark asserts that the allegations are inaccurate and untrue. He did not admit to those allegations in 2008, and he does not admit to them in 2024." ROA Vol. I at 36. In short, Mr. Clark's objection made "specific allegations of factual inaccuracy" sufficient to trigger the district court's Rule 32 obligation, and the Government's arguments to the contrary are without

11

merit. *United States v. Tindall*, 519 F.3d 1057, 1062 (10th Cir. 2008) (quotation marks omitted).

### B.    Whether the district court abided by Rule 32(i)(3)(B)

The parties agree that the district court made no factual finding as to the veracity of the Warrant Affidavit's contents. But the Government argues the transcript can be read to suggest that in sentencing Mr. Clark, the district court construed the factual dispute in Mr. Clark's favor, thereby functionally opting to "determine that ruling is unnecessary." Fed. R. Crim. P. 32(i)(3)(B).

The crux of this dispute hinges on the district court's somewhat unusual characterization of the disputed Warrant Affidavit. Recall that the district court described the disputed information as "simply allegations, not necessarily findings that those facts are true." ROA Vol. IV at 35–36. Later, after imposing the sex-offense-specific special condition of supervised release, the district court stated that it "hope[s] Mr. Clark will understand [the condition is not] because of some stigma or even because necessarily I believe he is guilty of all these things. It's because something happened in his past, and I want to make sure he moves beyond it." *Id.* at 55. Finally, the district court expressly stated that the condition would be imposed in part "because I am concerned, based on what's been alleged, what may have happened . . . that it's necessary to protect the public to ensure that Mr. Clark is not a danger to reoffend." *Id.*

The Government claims these statements evince that "the district court resolved the dispute, in essence, in [Mr.] Clark's favor." Appellee's Br. at 17.

12

Mr. Clark, by contrast, argues that the statements suggest the court "treated the hands-on allegations as true despite their contested nature," or, alternatively, "based its sentencing decision on speculation about their potential truth." Appellant's Br. at 15.

Although these statements do not support the notion that the district court treated the allegations "as true," *id.*, we agree that the district court improperly speculated as to the potential truth of the allegations when it expressly based its imposition of the special condition on "what's been alleged, what may have happened." ROA Vol. IV at 55. And we are not persuaded that this statement supports an inference that the district court "resolved the dispute, in essence, in [Mr.] Clark's favor," as the Government claims. Appellee's Br. at 17. To the contrary, the district court seems to have reasoned that because the facts contained in the allegations "may have happened," the special condition was necessary. ROA Vol. IV at 55. By tying the possibility that the allegations were true to the necessity of the condition, the district court cannot be said to have ignored the disputed allegations in the Warrant Affidavit. This is especially true in the absence of anything else resembling a "procedurally adequate Rule 32(i)(3)(B) ruling"—that is, a factual finding or an express statement that the disputed information will not affect sentencing. *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1118 (10th Cir. 2008); *see United States v. Lucero*, 130 F.4th 877, 883 (10th Cir. 2025) (explaining that the sentencing court "found that allegations of sexual abuse or grooming behavior in the [PSR] . . . were only *allegations*," but that "[i]mportantly, the sentencing judge noted

that the sexual abuse and grooming allegations would not be considered in [defendant's] sentencing").

In sum, because Mr. Clark's objection triggered the district court's Rule 32(i)(3)(B) fact-finding obligation, and because the court did not comply with that rule, the court committed legal error and thereby abused its discretion.

### C.     *Whether the error was harmless*

This leaves only the question of whether the error is reversible, or whether it was harmless. To establish harmlessness, "the government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected."[4] *Harrison*, 743 F.3d at 764 (quotation marks omitted). In the sentencing context, "[h]armless error is that which did not affect the district court's selection of the sentence imposed." *United States v. Kaufman*, 546 F.3d 1242, 1270 (10th Cir. 2008) (alteration in original). And where a reviewing court "can only speculate what sentence the district court would have issued absent a legal error, our precedent indicates that the error is not harmless, and that the matter should be returned to the district court for resentencing." *United States v. Henry*, 852 F.3d 1204, 1209 (10th Cir. 2017).

---

[4] The Government suggests that its invocation of harmless error somehow imposes on *Mr. Clark* an obligation to "demonstrate that th[e] error was prejudicial." Appellee's Br. at 22; *see id.* at 23 (arguing that Mr. "Clark cannot show that, had the court not [erred], it would not have imposed the special condition"). As Mr. Clark rightly notes, however, "[i]t is well-established that the burden of proving harmless error is on the government." *United States v. Kahn*, 58 F.4th 1308, 1318 (10th Cir. 2023) (quotation marks omitted).

The Government asserts the district court could have imposed the condition based on Mr. Clark's guilty plea to attempted sexual assault of a child without reference to the disputed information. That is true. But given the centrality of the speculation about the Warrant Affidavit's veracity to the district court's imposition of the special condition, we cannot say without speculating that the district court would have done so. *See* ROA Vol. IV at 55 ("So I am going to impose that condition because I am concerned, based on what's been alleged, what may have happened, . . . that it's necessary to protect the public to ensure that Mr. Clark is not a danger to reoffend."). In the absence of any other record indication that the court found Mr. Clark's attempted sexual assault conviction, exclusive of the allegations in the Warrant Affidavit, sufficient for imposition of the challenged condition, we would necessarily be speculating by countenancing this harmlessness theory.

The Government further argues, this time with more record support, that the district court's focus on Mr. Clark's recidivism risk assessments in the treatment materials shows that the court would have imposed the condition even absent the Rule 32 error. The district court indeed made clear that those risk assessments factored prominently in the decision to impose the challenged condition. *See, e.g.*, ROA Vol. IV at 47 (reasoning that if the treatment provider is "not comfortable saying" Mr. Clark is "not a high risk, then I don't know how I can sort of overcome that").

The problem with this theory, however, is that the risk assessments themselves embody the same error—reliance on the properly disputed Warrant Affidavit—that

15

gives rise to our harmlessness inquiry. Indeed, the risk assessments were rendered on uncritical recitations of not just the disputed allegations from the Warrant Affidavit as excerpted in the PSR, but on allegations that went well beyond that excerpt. Strikingly, the provider who assessed Mr. Clark wrongly believed he had pleaded guilty "to sexually assaulting two minor-aged children, male and female siblings," and then went on to expressly incorporate this core factual misapprehension into the recidivism risk assessments. ROA Vol. II at 97.

The Government suggests Mr. Clark waived any argument that the district court's reliance on the recidivism risk assessments was improper, reasoning that Mr. Clark's failure to lodge a written objection to the inclusion of summaries of those assessments in the PSR, along with his failure to repeatedly object to those assessments at the sentencing hearing, means they are deemed admitted. *See* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact."). We disagree.

True, Mr. Clark did not lodge written objections to the PSR's summary of the recidivism risk assessments. But the treatment materials laying bare the provider's reliance on the Warrant Affidavit and even more unproven facts became part of the PSR only after Mr. Clark filed his written objections. Indeed, the probation office appended those materials in response to Mr. Clark's written objections, apparently to bolster its recommendation that the court impose the challenged condition. But even if Mr. Clark had the opportunity to object in writing that the disputed Warrant Affidavit permeated the recidivism risk assessments, he preserved this argument at

the sentencing hearing. Defense counsel told the district court at sentencing that the Warrant Affidavit is "the referring sexual conduct that" the treatment materials were "talking about." ROA Vol. IV at 44. "That's what he's saying he didn't do. He didn't plead to it, he wasn't convicted of it, and he's consistently denied those extraneous allegations." *Id.*

Where a defendant makes no objection to facts in a PSR either in advance of or during the sentencing hearing, a district court does not err by relying on those facts. *See Lucero*, 130 F.4th at 885 (rejecting appellate challenge to district court's reliance on facts in the PSR because defendant did not object "during his sentencing proceeding" and the court was thus "free to accept" the uncontested fact (quotation marks omitted)); *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994) ("Failure to object to a fact in a presentence report, *or failure to object at the hearing*, acts as an admission of fact." (emphasis added)). But Mr. Clark alerted the district court to his objection to the recidivism risk assessments' reliance on the unproved allegations in the Warrant Affidavit at the sentencing hearing.[5]

Because the district court's reliance on the risk assessments compounded the Rule 32 error, we cannot conclude that the district court would have imposed the special condition in the absence of that error. Accordingly, the Government has not

---

[5] The Government cites no authority suggesting Mr. Clark was required to reraise this argument each time the district court referred to the risk assessments at the sentencing hearing. Mr. Clark articulated the contours of his contention that the disputed Warrant Affidavit formed an inaccurate predicate for the provider's risk assessments, and he was not required to reraise that argument throughout the hearing.

shouldered its burden to prove harmlessness, and Mr. Clark is entitled to a remand for resentencing.

### III.    CONCLUSION

For the reasons articulated, the district court abused its discretion by neither requiring the Government to prove the veracity of the disputed Warrant Affidavit nor ignoring that information altogether as required by Rule 32(i)(3)(B). Because we cannot say the error was harmless without resort to undue speculation, we VACATE Mr. Clark's sentence and REMAND for resentencing.

Entered for the Court


Carolyn B. McHugh
Circuit Judge