FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

April 7, 2026

**Christopher M. Wolpert**
**Clerk of Court**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 25-8014 |
| | (D.C. No. 2:24-CR-00086-KHR-1) |
| CONRAD TILLMAN, | (D. Wy.) |
| Defendant - Appellant. | |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS** and **McHUGH**, Circuit Judges, and **VRATIL**, District Judge.[**]
_____

Conrad Tillman pled guilty to second degree murder in violation of 18 U.S.C. §§ 1111 and 1153. The district court sentenced him to 360 months in prison.[1] The district court based the sentence on departures under Sections 5K2.6 and 5K2.0 of the Sentencing Guidelines and a variance under 18 U.S.C. § 3553(a). Defendant appeals the sentence, arguing that Section 5K2.6 of the Guidelines does not apply to second

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[**] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

[1] With credit for time served in tribal custody, the sentence was 348 months and 23 days.

degree murder and that the district court did not adequately explain why it departed five levels under Sections 5K2.6 (two levels) and 5K2.0 (three levels). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we vacate defendant's sentence and remand for resentencing.

## I.    BACKGROUND

On the night of April 14, 2024, defendant shot and killed his wife Utahnna. They had begun arguing while driving with their ten-year old daughter ("M1") on Highway 287 south of Fort Washakie, Wyoming. Defendant, who was driving, hit Utahnna on her face then shot her in the head at close range. M1 was in the back seat and witnessed the escalating argument and murder. The indictment charged defendant with first degree murder in violation of 18 U.S.C. §§ 1111 and 1153 (Count One), brandishing and discharging a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (iii) (Count Two) and brandishing and discharging a firearm resulting in death in violation of 18 U.S.C. §§ 924(c) and 924(j)(1) (Count Three). Defendant pled guilty to second degree murder, a lesser included offense of Count One, in exchange for the government's agreement to move to dismiss Counts Two and Three at sentencing.

At sentencing, the government called the case agent, who testified about M1's account of the events leading to her mother's death. The government also called defendant's stepson, who testified that defendant verbally and physically abused him, and a doctor, who reconstructed the gunshot wound. Defendant also testified. The district court found that defendant's total offense level was 35, with a criminal

2

history category of I, which resulted in an advisory Guidelines range of 168 to 210 months.  The parties did not object to that calculation.  As noted, however, based on both departures and a variance, the district court imposed a sentence of 360 months.  ROA Vol. III at 141–42.

In this appeal, defendant does not directly challenge the variance.  He challenges the two-level upward departure under Section 5K2.6 and the court's failure to explain the extent of that departure as well as a three-level upward departure under Section 5K2.0.  The departures resulted in an adjusted Guidelines range of 292 to 365 months—which was 124 to 155 months higher than the initial Guidelines calculation.[2]

### A.  District Court Departure Findings

Before November 1, 2025, the Guidelines allowed a sentencing court to depart for aggravating and mitigating circumstances set forth in Sections 5K2.1 through 5K2.23 if any such circumstances were present and had "not adequately been taken into consideration in determining the applicable guideline range."  U.S.S.G. § 5K2.0(a)(2)(A) (Nov. 1, 2024).  One circumstance which the Commission identified was Section 5K2.6, which permitted a sentencing court to depart upward

---

[2] Effective November 1, 2025, Chapter 5 of the Sentencing Guidelines Manual no longer includes the departures previously set forth in Sections 5K2.0 through 5K2.23. U.S.S.G. App. C, Amend. 836 (deleting Part K, Subpart 2 titled Other Grounds for Departure).  All citations in this opinion are to the November 1, 2024 edition of the Guidelines Manual.

"[i]f a weapon or dangerous instrumentality was used or possessed in the commission of the offense." U.S.S.G. § 5K2.6.

In addition to specific aggravating and mitigating circumstances set forth in Sections 5K2.1 through 5K2.23, Section 5K2.0 contained two catchall subsections which permitted sentencing courts to depart in "exceptional case[s]" (1) based on circumstances which the Commission had not considered in establishing the guideline range or identified as grounds for a potential departure, U.S.S.G. § 5K2.0(a)(2)(B), or (2) where the Commission considered the circumstance that formed the basis for the departure but the circumstance was present "to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense," U.S.S.G. § 5K2.0(a)(3).

The government's sentencing memorandum sought to elevate defendant's sentencing range for second degree murder to the Guidelines range for first degree murder (after adjustment for acceptance of responsibility). To reach this outcome, it requested a five-level upward departure, citing Sections 5K2.6 and 5K2.0 of the Guidelines.[3] It did not seek or provide a rationale for a specific level of departure under each guideline.

---

[3] The government also cited Sections 5K2.1 (Death) and 5K2.21 (Dismissed and Uncharged Conduct), but the district court declined to apply either provision. *See* ROA Vol. III at 135–37 (district court found Section 5K2.1 did not apply because government did not establish that murder was premeditated); *id.* at 138 (district court found that Section 5K2.21 did not apply because while first degree murder charge was dismissed, case was second degree murder case "with exceptional and aggravating circumstances").

The government argued that Section 5K2.6 justified an unspecified departure because defendant endangered M1 by brandishing and discharging a gun while operating a motor vehicle. Citing *United States v. Kelly*, 1 F.3d 1137 (10th Cir. 1993), defendant responded that murder subsumes the use of a dangerous instrumentality, so the district court could not depart under Section 5K2.6. ROA Vol. II at 150. The district court did not address defendant's argument, but departed two levels upward under Section 5K2.6, explaining that "having the firearm present, using the firearm in the presence of M1, in the presence of an enclosed area of the pickup, without justification" was out of the ordinary and extreme. ROA Vol. III at 138.

As to Section 5K2.0, the government argued that the guideline calculation did not account for the fact that defendant murdered his wife in front of their ten-year-old daughter, leaving her with memories of the murder for the rest of her life.[4] Defendant's sentencing memorandum did not respond to the government's request to depart under Section 5K2.0. The district court departed upward three levels under Section 5K2.0, noting that "M1's presence . . . is just such an exceptional

---

[4] Defendant's Presentence Investigation Report ("PSR") recommended only a one-level upward departure on those grounds. The PSR and the government cited the wrong catchall provision—subsection 5K2.0(a)(3)—as a basis for departing on the basis of M1's trauma. In determining the offense level for second degree murder, the Sentencing Commission did not consider trauma to witnesses, so the relevant catchall provision was subsection 5K2.0(a)(2)(B). Correction is not necessary for purposes of appeal, so for purposes of discussion we refer generally to the departure as one under Section 5K2.0.

circumstance and is present to a degree that is substantially in excess of that which is ordinarily involved in the offense." *Id.* at 136.

### B. Additional Findings And Section 3553(a) Factors

The district court described defendant's conduct as "unconscionable and reprehensible." *Id.* at 133. It explained that aside from Utahnna losing her life at the young age of 36, the most significant impact of defendant's conduct was that M1 was present in the back seat, witnessing the fight between her parents, defendant's anger and her mother's murder. The court emphasized that M1's presence made the case different from garden variety, heartland second degree murder cases.

Turning to Section 3553(a), the district court noted that it had already discussed the nature and circumstances of the offense. It added that it was also considering the harm to Utahnna's face before defendant shot her, "the physical harm and the name-calling to M1" and defendant's use of the firearm. *Id.* at 139. The district court described the crime as "senseless," "unnecessary" and "cruel," and noted that the family (particularly Utahnna's children) had suffered a "tremendous loss" and "tragedy." *Id.*

In considering defendant's history and characteristics, the district court noted that defendant's anger and need for power and control (including in his relationships with M1 and defendant's stepson) "had been percolating for some time" and "culminated in Utahnna's death." *Id.* On the other hand, it recognized defendant's "lack of countable criminal history" and some positive contributions to the community. *Id.* at 140.

6

The district court addressed the need for adequate deterrence and protection of the public, noting that defendant was a "danger to society" due to his anger, power and control issues.  *Id*.  The district court added that a 360-month sentence would promote respect for the law and provide just punishment.

Before imposing sentence, the district court noted that with a total upward departure of five levels, defendant's total adjusted offense level was 40, with a criminal history category of I, which resulted in a guideline range of 292 to 365 months.  Considering the five-level departure, and as a variance, the district court sentenced defendant to 360 months.

Defendant timely appealed.

## II.    DISCUSSION

As noted, the district court initially found without objection that defendant's total offense level was 35, with a criminal history category of I, which resulted in an advisory Guidelines range of 168 to 210 months.  It departed upward two levels under Section 5K2.6 (Weapons and Dangerous Instrumentalities) and three levels under a catchall provision of Section 5K2.0 (Grounds for Departure), which resulted in an adjusted Guidelines range of 292 to 365 months.  Based on its departures, as well as a variance under 18 U.S.C. § 3553(a), the district court imposed a sentence of 360 months.

Defendant argues that the district court erred in departing upward under Section 5K2.6 and that it did not adequately explain why it departed a total of five levels

7

under Sections 5K2.6 and 5K2.0.[5] *See* U.S.S.G. §§ 5K2.0, 5K2.6. For reasons stated below, we agree that the district court erred in applying Section 5K2.6 and the government has not shown that the error was harmless.[6]

On appeal, defendant does not dispute the district court's factual findings, but argues (as he did below) that as a matter of law, Section 5K2.6 does not apply in second degree murder cases. We review de novo the district court's two-level departure under Section 5K2.6. *See United States v. Lee*, 71 F.4th 1217, 1221 (10th Cir. 2023).

### A. The District Court Erred In Departing Upward Under Section 5K2.6

At the time of sentencing, Section 5K2.6 provided as follows:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

U.S.S.G. § 5K2.6. The district court found that "as a result of the discharge of the firearm, a substantial sentence increase to the tune of two additional levels is warranted."

---

[5] While defendant challenges the district court's explanation for the extent of departure under both Sections 5K2.6 and 5K2.0, he does not argue that the district court erred in applying Section 5K2.0.

[6] The government concedes that the district court erred in failing to explain the overall extent of the five-level departure. At the time of sentencing, however, defendant did not object to the district court's lack of explanation. We would therefore review for plain error. *See United States v. Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020). Because the district court erred in departing two levels under Section 5K2.6, however, and the error was not harmless, we reverse and remand for resentencing. Therefore we need not address whether the court's failure to explain its five-level overall departure survives plain error review.

ROA Vol. III at 138.  The district court noted that "[a]gain, having the firearm present, using the firearm in the presence of M1, in the presence of an enclosed area of the pickup, without justification" was "out of the ordinary" and "extreme."  *Id.*

Defendant argues that the district court's departure under Section 5K2.6 was categorically improper because the guideline for second degree murder assumes the use of a dangerous instrumentality.  In *Kelly*, *supra*, we held that because "murder must subsume the use of a dangerous instrumentality," a departure under Section 5K2.6 for use of a weapon or dangerous instrumentality is ordinarily improper for the underlying offense of second degree murder.  1 F.3d at 1142.  We explained that in formulating the applicable guideline range for both first and second degree murder, the Sentencing Commission contemplated that a dangerous instrumentality would be used.  *Id.*  "The fact that the end result of a defendant's conduct is murder necessarily implies that the instrumentality effectuating the death of the victim was dangerous in the manner it was used."  *Id.*

Section 5K2.6 ordinarily does not apply to second degree murder convictions, but *Kelly* does not necessarily preclude its application in every case.  We have recognized that a sentencing court can depart in the rare circumstance where defendant's use of a firearm or dangerous instrumentality falls outside the heartland or typical cases embodying the conduct that the second degree murder guideline describes.  *Id.*; *see also United States v. Barber*, 119 F.3d 276, 285–86 (4th Cir. 1997) (en banc) (use of weapon within heartland of second degree murder cases, so on remand district court must consider whether use of firearm was atypical of situations encompassed within heartland

of second degree murder guideline in Section 2A1.2).  Here, however, the factual findings by the district court do not establish that defendant's use of a gun fell outside the heartland of second degree murder cases.

In applying Section 5K2.6, the district court noted that defendant used the firearm in M1's presence "without justification."  ROA Vol. III at 138.  While second degree murder does not require premeditation, it does require "malice aforethought."  18 U.S.C. § 1111(a) (defining first and second degree murder).  In setting the base offense level for second degree murder, the Sentencing Commission contemplated that a defendant would use a firearm or dangerous instrumentality without justification, *i.e.* with malice aforethought.  *See Kelly*, 1 F.3d at 1140 n.2.  The district court did not attempt to explain how defendant's use of the gun "without justification" was atypical of conduct in second degree murder cases.  Therefore, its reliance on lack of justification did not warrant a departure under Section 5K2.6.

As noted, without proposing a specific number of levels, the government generally cited endangerment of M1 as the basis for a departure for use of a firearm.  It argued that when defendant brandished and discharged the firearm, M1 could have "easily crossed into the line of fire" or defendant could have "inadvertently pointed the gun at his daughter . . . if the pickup crashed or was struck."  ROA Vol. II at 137.  From this and the district court's broad comments about M1's presence, the government argues that in departing under Section 5K2.6, the district court relied on endangerment of M1 and ongoing psychological trauma to her.  The district court, however, did not expressly mention endangerment or trauma to M1 as a basis for departure under Section 5K2.6.

10

The district court could have reasonably found endangerment, but it did not do so.[7]

Likewise, in departing upward under Section 5K2.6, the district court did not mention

psychological trauma to M1.[8] Absent factual findings about endangerment or

psychological trauma, we will not speculate that the district court applied Section 5K2.6

based on either factor. *See United States v. Williams*, 48 F.4th 1125, 1136 (10th Cir.

2022) (appellate court will not engage in initial fact-finding or speculate how district

court could have calculated drug quantity); *United States v. Roberts*, 14 F.3d 502, 523

(10th Cir. 1993) (not role of appellate court to make factual findings necessary to support

sentencing calculation).

In sum, *Kelly* does not necessarily preclude application of Section 5K2.6 in all

second degree murder cases, but in this case the district court's factual findings do not

establish that defendant's use of the firearm was so extraordinary or atypical of the

---

[7] Even if the district court had found endangerment to M1, it could have departed upward under Section 5K2.6 only if the court had concluded that defendant endangered M1 to such a degree or in such a manner that was atypical of second degree murder cases.

[8] Section 5K2.6 does not mention trauma or psychological injury, and the government has not cited a case which applied Section 5K2.6 based on psychological trauma to a bystander or witness such as M1. Other Guideline provisions potentially address trauma to bystanders. *See* U.S.S.G. § 5K2.3 (Extreme Psychological Injury); *see also* U.S.S.G. § 5K2.8 (Extreme Conduct). Section 5K2.3 directly covers extreme psychological injury to victims, and the Sentencing Commission apparently did not intend for such injury to also be covered under Section 5K2.6. *See generally Collins v. Yellen*, 594 U.S. 220, 248 (2021) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)).

11

heartland of cases as to warrant application of a firearm enhancement. The district court therefore erred in departing upward under Section 5K2.6.

### B. *The Error Was Not Harmless*

Having found that the district court erred, we consider whether that error was harmless. *See United States v. Lente*, 647 F.3d 1021, 1037 (10th Cir. 2011). As the beneficiary of the error, the government must prove harmlessness by a preponderance of the evidence. *Id.* An error is harmless if it "did not affect the district court's selection of the sentence imposed." *Id.* at 1037–38 (quoting *United States v. Kaufman*, 546 F.3d 1242, 1270 (10th Cir. 2008)).

The government argues that any error was harmless because the district court imposed the same sentence through a variance, which it adequately explained and defendant does not challenge on appeal. We cannot affirm based on the variance, however, because the government has not established that the district court's error in applying Section 5K2.6 had no impact on the variance sentence of 360 months. As noted, the variance here was quite substantial: from a range of 168 to 210 months to a range of 292 to 365 months—124 to 155 months (between 10 and 13 years) higher than the original starting point to which no one objected. The government's stated intent in seeking that sentence was to incarcerate defendant for first degree murder when he had actually pled guilty to second degree murder.

In discussing the Section 3553(a) factors, the district court specifically mentioned that it had considered "the utilization of the firearm as . . . discussed already," which presumably referred to the court's discussion of the Section 5K2.6 departure that was in

12

error. ROA Vol. III at 139. In addition, the district court's explanation of why it departed

under Section 5K2.6 was substantially similar to its explanation under Section 5K2.0, and

the district court apparently relied on these same considerations for its variance.[9] On this

record, given the magnitude of the variance, the government's rationale for a five-level

departure and the district court's error in applying Section 5K2.6, we cannot assume that

the district court's departures did not influence its variance. *Cf. United States v. Barnes*,

141 F.4th 1156, 1163 (10th Cir. 2025) ("Even if some of the district court's statements

regarding the departure were erroneous, such an error would be harmless because there is

no reason to think that the district court would impose a different sentence on remand if

we were to reverse the departure while affirming the variance." (internal quotations and

citation omitted)). Without the two level departure under Section 5K2.6, the adjusted

Guidelines range would have been 235 to 293 months—nearly ten years less than

defendant's sentence of 360 months. The government has offered no convincing

reassurance that the district court's erroneous departure of two levels under

Section 5K2.6 did not taint its sentence of 360 months as a variance. *See United States v.*

*Harrison*, 743 F.3d 760, 764 (10th Cir. 2014) (error not harmless if appellate court must

speculate whether absent the error, district court would have reached same

---

[9] *Compare* ROA Vol. III at 136–37 (departing upward under Section 5K2.0 because case was "not your ordinary second-degree murder case" due to "M1's presence and the close proximity and the decision to use the firearm, the gun, to take Utahnna's life in front of her daughter") *with id.* at 137–38 (departing upward under Section 5K2.6 because discharge of firearm "in the presence of M1, in the presence of an enclosed area of the pickup, without justification" made case "out of the ordinary" and "extreme").

determination).  Because the government has not met its burden to prove that the district court's error in applying Section 5K2.6 was harmless, we vacate defendant's sentence and remand for resentencing.  *See Lee*, 71 F.4th at 1221 ("Because we do not know whether the district court would have imposed a different sentence had it applied U.S.S.G. § 5G1.3(b)(1), we must vacate Defendant's sentence and remand for resentencing.").[10]

### III.    CONCLUSION

We **VACATE** defendant's sentence and **REMAND** to the district court for resentencing.

Entered for the Court

Kathryn H. Vratil
District Judge

---

[10] The government argues that remand would be futile because the 2025 amendments to the Sentencing Guidelines have eliminated departures from the Guidelines Manual.  As explained above, the government has not shown that absent the upward departure under Section 5K2.6, the district court would have nevertheless imposed a sentence of 360 months as a variance.  Remand for resentencing therefore is necessary.